IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LILLIE M. MIDDLEBROOKS          )
                                )
        Plaintiff,              )
                                )
    v.                          )       1:11cv46  (LMB/TCB)
                                )
RAY MABUS, Secretary,           )
United States Department        )
of the Navy                     )
                                )
        Defendant.              )

## MEMORANDUM OPINION

In a complaint filed on July 18, 2011, plaintiff pro se, Lillie M. Middlebrooks ("Middlebrooks"), alleges over 1,000 violations of the Privacy Act ("Act"), 5 U.S.C. § 552a, against the Secretary of the Navy, Ray Mabus ("the Navy"), in his official capacity, arising out of the Navy's disclosure of information related to plaintiff's termination in February 2003. Compl. ¶ 6.[1] The Navy has moved to dismiss, or in the alternative, for summary judgment. For the reasons stated below, defendant's Motion to Dismiss will be granted.

## I.   BACKGROUND

Middlebrooks, an African-American woman residing in Annandale, Virginia, began work as a registered nurse ("RN") at the National Naval Medical Center ("NNMC") on or about September 30, 2002 as a

---

[1] The actual number of counts is difficult to discern. On the face of the unwieldy, repetitive complaint, there appear to be 1,209 counts; however, Middlebrooks elsewhere states that she filed a 1,187-count civil action. Pl.'s Opp'n Mot. to Dismiss or Summ. J. at 1.

probationary employee. Id.[2] Middlebrooks alleges that after she complained of racial and sexual discrimination, hostile work environment, and retaliation, the Navy and NNMC solicited false complaints about her performance from low-ranking NNMC personnel, which ultimately led to her termination. Id.

The Navy, however, paints a very different picture of plaintiff's employment, stating that almost immediately after Middlebrooks began working at the NNMC, her colleagues started complaining to her supervisor about aspects of her performance. See Def.'s Mem. Supp. Mot. to Dismiss or Summ. J. ("Def.'s Mem.") at 3. Their criticisms included, but were not limited to, poor communication of patient information, frequent departures at the end of her shift and at lunch without ensuring proper patient turnover, misplacing patient files, permitting a patient who had received an injection to leave before the conclusion of the standard monitoring period that follows, refusal to perform basic nursing tasks, and failure to observe protocol when dealing with an individual who had been stuck with an HIV-infected patient's needle. See Middlebrooks v. Winter, No. WGC-05-3209, 2008 WL 8116107, at *2-16

---

[2] The Navy states that plaintiff's employment began on September 20, 2002, and that her position was conditioned on successful completion of a one-year probationary period that was to end on September 29, 2003. Def.'s Mem. Supp. Mot. to Dismiss or Summ. J. at 2.

(D. Md. 2008), aff'd, 333 F. App'x 762 (4th Cir. 2009).[3] Eventually, formal written complaints about Middlebrooks were received. Id. Supervisors met with Middlebrooks on three separate occasions, inviting her to challenge the poor performance reviews and re-attend orientation, but she declined these invitations and instead asked for the name, race, and gender of anyone who had complained about her, contending that these colleagues were not qualified to judge how she performed her nursing duties. Id.

On or about February 24, 2003, Middlebrooks was terminated from her position after the Navy issued her a Notice of Decision to Effect Termination of Probationary Appointment ("Notice"). Compl. ¶ 6; Def.'s Mem. at 4. The Notice identified four separate reasons for her termination: (1) failing to distribute and assign clinic responsibilities to the military corpsman on duty; (2) failing to demonstrate proficiency with flexible sigmoidoscopy, electrocardiograms, phlebotomy, and other basic nursing skills by refusing to perform these procedures when directed despite being hired for these competencies; (3) failing to follow the prescribed

---

[3] Middlebrooks contested her termination, eventually filing a discrimination lawsuit in the District of Maryland. The district court held that Middlebrooks had failed to make out a prima facie case of discrimination and included an exhaustive discussion of the specific details of her colleagues' grievances against her. Middlebrooks, 2008 WL 8116107, at *1, 2-16. That decision was affirmed on appeal and is now final. The Navy correctly asserts that Middlebrooks is collaterally estopped from challenging the factual determinations made by the district court in that case. Def.'s Mem. at 2 & n.1.

protocol for reporting an occupational exposure incident (needle stick) from a known HIV patient; and (4) failing to assist two medical providers with their patient assessments and interventions. <u>See</u> Def.'s Mem. at 4; <u>Middlebrooks</u>, 2008 WL 8116107, at *18-19.

Middlebrooks alleges that after her termination, the Navy, the NNMC, and the Bureau of Medicine and Surgery ("BUMED"), which "provides guidance concerning the [Navy's] management program," internally released her personnel record to four federal employees.[4] Compl. ¶ 6. She also alleges that approximately five years after she was terminated, those same employees released her personnel record to the U.S. Department of Health and Human Services ("HHS"); the Health Resources and Services Administration ("HRSA"), an HHS agency; the Healthcare Integrity and Protection Databank ("HIPDB"), a statutorily mandated healthcare reporting program created by the Secretary of HHS; and the Tennessee Board of Nursing. Compl. ¶ 9. The personnel record to which she refers is apparently the aforementioned Notice that memorialized her termination. Def.'s Mem. at 4.

---

[4] Middlebrooks alleges that Vice Admiral Adam M. Robinson, Marcy Auclair, D.J. Sherman, and Carmen C. Birk "corruptly and viciously released inaccurate . . . information from the Plaintiff's privacy act protected records . . . ." Compl. ¶ 9. Robinson was the Navy's Surgeon General, <u>id.</u> ¶ 11; Auclair was an attorney for the Navy, <u>id.</u> ¶ 12; Sherman was the Navy's Director of Medical-Legal Affairs, <u>id.</u> ¶ 13; and Birk was an RN "who served as a BUMED risk manager" for the Navy, <u>id.</u> ¶ 14.

4

Middlebrooks alleges that on January 18, 2009, she received a letter from the BUMED notifying her of these disclosures. Compl. ¶ 16. Among the pieces of information she claims were disclosed in violation of the Privacy Act were her full legal name, id. ¶ 18; date of birth, id. ¶ 19; gender, id. ¶ 20; full social security number, id. ¶ 21; undergraduate alma mater and graduation year, id. ¶¶ 22-23; and nursing license number issued by Tennessee, id. ¶ 24.[5] She complains that the release of her full name, date of birth, and social security number "sets the Plaintiff up for identity theft remarkably." Id. ¶ 60. Additionally, Middlebrooks alleges that defendants improperly disclosed the date of her termination and false facts surrounding her termination. Id. ¶¶ 25-33. She also asserts that the information contained in her personnel record was known by the Navy to be false and that the recipients had no official need to know the information.

As relief, Middlebrooks requests that the Court award her damages of at least $1,000 for every Privacy Act violation and order the Navy both to withdraw its reports to the external entities and to request that those entities "completely void Defendant's report." Compl. at 63. She also seeks unspecified damages for embarrassment, reputational and career harm, and physical injury as well as costs.

---

[5] In the exhibits containing the relevant documents, information such as Middlebrooks' social security number, date of birth, and RN license number are redacted. See Def.'s Mem., Exs. A-B, D-E.

Id. Furthermore, she asks the Court to order the external entities, who are not named in this suit, to "completely expunge and destroy" the Navy's report. Id.[6] Finally, she requests any other proper injunctive and declaratory relief. Id.

On July 5, 2011, the Navy filed a Motion to Dismiss [Dkt. No. 9] and a Motion for Summary Judgment [Dkt. No. 10] along with a Roseboro notice [Dkt. No. 12]. The Navy submitted its opening brief and a reply, and Middlebrooks filed an opposition brief and a sur-reply.[7] The parties also appeared for oral argument, during which plaintiff exhibited extremely inappropriate courtroom behavior culminating in an outburst.

## II.   DISCUSSION

### A. Standard of Review

Although pleadings filed by a pro se party must be "liberally construed," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted), under Fed. R. Civ. P. 12(b)(6), a complaint will be dismissed if "it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th

---

[6] The Navy briefly argues that Middlebrooks has failed to join a necessary party under Fed. R. Civ. P. 19(a)(1). Def.'s Mem. at 21. This issue need not be discussed further given the other defects in the complaint.

[7] Local Rule 7(F)(1) permits a sur-reply to be filed only with leave of the court, which plaintiff did not request. As Middlebrooks is proceeding pro se, the Court in its discretion has considered this pleading.

Cir. 1999).   The Court must accept all of the complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff.   Id. This requirement applies to facts alone and not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In addition, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 1950 (internal quotation marks omitted). "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what . . . the claim is and the ground upon which it rests." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c). A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In ruling on a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). However, "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008).

B. Alleged Privacy Act Violations

The Navy properly characterizes the complaint's numerous allegations as falling into three categories — (1) the accuracy of Middlebrooks' record, (2) the Navy's disclosure of her record, and (3) the Navy's institutional controls over information covered under the Act — and argues that none of them establishes an actual violation of the Act. Def.'s Mem. at 16.

1. Accuracy of Plaintiff's Personnel Record

Middlebrooks alleges that the Notice describing her termination, which was disclosed inside and outside the agency, contained knowingly false information. E.g., Compl. ¶¶ 1, 175. The Act requires agencies maintaining a system of records to

8

(5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

(6) prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes[.]

§ 552a(e)(5), (6).

It is clear at the outset that plaintiff's accuracy claims are time-barred. Alleged violations of the Act are subject to a two-year statute of limitations. See § 552a(g)(5) (action may be brought "within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation"). A cause of action arises under the Act "when the person knows or has reason to know of the alleged violation." Wills v. OPM, No. 932079, 1994 WL 22349, at *1 (4th Cir. Jan. 28, 1994).

The Navy argues that Middlebrooks first learned of the alleged inaccuracies in her personnel record on February 20, 2003, the date

9

she received the Notice of her termination. Def.'s Mem. at 4.
Middlebrooks asserts that she did not receive a detailed Notice
providing the reasons for her termination at the time she was
dismissed from her position. Pl.'s Sur-Reply to Def.'s Reply ("Pl.'s
Sur-Reply") at 2, ¶ 5-6. The record does not support plaintiff's
characterization that her Notice did not include the bases for her
dismissal. As reflected in the opinion of the Maryland district court,
the termination Notice issued on February 20, 2003 contained
extensive factual recitals of the specific grounds for plaintiff's
termination. Middlebrooks, 2008 WL 8116107, at *18-19.

Even if the Court credits plaintiff's assertion that she was
unaware of the alleged inaccuracies after February 20, 2003 and does
not find that the termination Notice put her on, at the very least,
inquiry notice, Middlebrooks certainly became fully aware of the
alleged errors by March 19, 2008, the date on which the district
court issued its 38-page opinion rejecting her discrimination claims.
Def.'s Mem. at 17; Middlebrooks, 2008 WL 8116107, at *2-19.[8] The
district court's lengthy opinion detailed the basis for granting
summary judgment to the Navy, thereby providing plaintiff with more
than enough "reason to know of the alleged violation." Wills, 1994

---

[8] That litigation lasted from March 18, 2005 through the grant
of summary judgment on March 19, 2008. Although Middlebrooks was
pro se during the final year of the case, she was represented by
counsel throughout the discovery process and until her attorney's
withdrawal on February 8, 2008. Middlebrooks, 2008 WL 8116107, at
*1 n.1, 18.

WL 22349, at *1. Plaintiff filed the instant complaint on January 14, 2011, which was late by over nine months if the district court opinion is deemed to have put her on notice and was nearly eight years late if the February 20, 2003 Notice started the limitations period.

Middlebrooks argues that her accuracy claims accrued on January 18, 2009 when she received a letter from BUMED notifying her that it had released information to HHS, the Tennessee Board of Nursing, HRSA, and the HIPDB. Pl.'s Opp'n Mot. to Dismiss or Summ. J. ("Pl.'s Opp'n") at 23-24; Compl. ¶ 16.   Although the January 18, 2009 notice of disclosure starts the time period for plaintiff's claims of improper disclosure, it does not apply to plaintiff's accuracy claims.

With respect to the accuracy of the record, the Navy correctly argues that all of plaintiff's claims are time-barred. The 2003 Notice put plaintiff on notice, and the district court's March 2008 opinion unequivocally alerted plaintiff to the alleged inaccuracies. Because she filed her accuracy claims more than two years after the district court issued its opinion, all claims involving inaccuracies in her record must be dismissed as time-barred.

Even if these claims were not untimely, the Navy correctly argues that plaintiff's challenge to the accuracy of her record is a veiled attempt to relitigate her discrimination claim, which is now <u>res judicata</u> and also beyond the scope of the Act. Def.'s Mem. at 7, 20.

The Act is a vehicle for correcting <u>facts</u> in agency records if those facts are erroneously recorded but not for altering records that reflect an administrative decision or assessments, such as incident reports and evaluations. <u>Reinbold v. Evers</u>, 187 F.3d 348, 360-61 (4th Cir. 1999)("While the Privacy Act permits an individual to contest the accuracy of the facts contained in an agency's administrative records, [it] does not permit an individual to force an agency to rewrite history, changing the record in Orwellian fashion to pretend that it reached some other conclusion.") (internal quotation marks omitted).[9]

Plaintiff's allegations clearly challenge opinions. Specifically, she complains of her colleagues' and supervisors' assessments of her performance. Yet, if Middlebrooks believed that her evaluations were misleading or unfair, her proper recourse was to place a "concise statement in [her] records which sets forth [her] disagreement with the opinions contained therein." <u>Subh v. Dep't of Army</u>, No. 1:10cv433, 2010 WL 4961613, at *3-4 (E.D. Va. Nov. 30, 2010)(citing § 552a(d)(3)). Therefore, even were the accuracy claims

---

[9] The Navy acknowledges that Middlebrooks did allege the inaccuracy of one fact, a typographical error that listed her termination year as 2004 rather than 2003, but the Navy argues that she cannot show harm from this error, as required to prevail under the Act. Def.'s Mem. at 20 & n.3. No relief is available on this claim, which, as discussed above, is time-barred.

not time-barred, they would have to be dismissed for failure to state a claim under the Act.[10]

## 2. Disclosure of Record

Middlebrooks alleges that the Navy improperly released protected information about her to individuals and entities that did not "need to know" the information. Compl. ¶¶ 9-14, 34-36. The Act states that no agency "shall disclose any record which is contained in a system of records . . . to any person, or to another agency . . . unless disclosure of the record" falls under one of the twelve exceptions enumerated in § 552a(b).

The Navy contends that the intra-agency release of plaintiff's record was permissible under the first statutory exception allowing disclosure to "those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." § 552a(b)(1). In considering a disclosure under this exception, "[w]hat must be determined . . . is whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform

---

[10] The Navy argues that should the Court find that Middlebrooks has alleged claims for injunctive relief as well as for damages, she was required but failed to exhaust her administrative remedies on those injunction claims. Def.'s Mem. at 22-23 (citing Quinn v. Stone, 978 F.2d 126, 137-38 (3d Cir. 1992)). It is undisputed that Middlebrooks did not attempt to seek amendment to her allegedly inaccurate record pursuant to § 552(d)(2). Because she failed to timely exhaust her administrative remedies, she cannot now seek an order to amend or expunge her record.

those duties properly." Doe v. U.S. Dep't of Justice, 660 F. Supp. 2d 31, 44-46 (D.D.C. 2009).

The individuals Middlebrooks alleges received her record include Vice Admiral Adam M. Robinson, Marcy Auclair, D.J. Sherman, and Carmen C. Birk. Compl. ¶¶ 9-14. Robinson was the Navy's Surgeon General. Sherman was the Navy's Director of Medical-Legal Affairs who notified the Tennessee Board of Nursing that an administrative action, Middlebrooks' termination, had occurred and then, upon the Tennessee Board of Nursing's request, provided it with more extensive records. Def.'s Mem, Ex. B. In that correspondence, Sherman named Auclair, a Navy attorney, as the appropriate contact for further inquiries. Id. Birk, a registered nurse "who served as a BUMED risk manager" for the Navy, Compl. ¶ 14, was apparently the employee who submitted the administrative action report to the HIPDB. Def.'s Mem, Ex. A.

The Navy indicates that this small group of senior employees was required "to perform their job of legal oversight for the agency (i.e., to determine whether it was appropriate to report Middlebrooks' termination to the HIPDB and the Tennessee Board of Nursing)." Id. As the Navy correctly points out, to determine proper compliance with disclosure regulations, actual "people within that agency have [to make] such a determination." Def.'s Reply at 14. In response to the Navy's position, plaintiff offers neither legal arguments nor facts, instead merely repeating that these senior

14

employees had no "need to know" plaintiff's information and that her record contained false information. See, e.g., Compl. ¶¶ 34-36; Pl.'s Opp'n at 14-17.

With respect to the external disclosures, the Navy contends that the Act permitted the Navy to disclose plaintiff's record to certain entities outside the Navy as part of a "routine use," defined as disclosure of a record "for a purpose compatible with the purpose for which it was collected." See § 552a(b)(3); § 552a(a)(7). To qualify as a routine use, the disclosure must also be in accordance with the "routine uses" the agency publishes in the Federal Register pursuant to § 552a(e)(4)(D) so that the public will be on notice of the ways that an agency might use information it gathers. Fattahi v. Bureau of Alcohol, Tobacco, & Firearms, 186 F. Supp. 2d 656, 660-62 (E.D. Va. 2002) (citing Local 2047, Am. Fed'n of Gov't Emps. v. Defense Gen. Supply Ctr., 573 F.2d 184 (4th Cir. 1978)) (rejecting Privacy Act claim because the ATF's disclosure to condo association that plaintiff had applied for a license to sell firearms was a "routine use").

The Navy argues that its disclosure to HHS, HRSA, the HIPDB, and the Tennessee Board of Nursing comported with the compatible use and Federal Register publication requirements. To demonstrate that its disclosure of Middlebrooks' personnel record was a routine use for the Navy, the Navy quotes from the published Department of Defense ("DoD") "Blanket Routine Uses" policy:

> If a system of records maintained by a DoD Component to
> carry out its function indicates a violation or potential
> violation of law, whether civil, criminal or regulatory
> in nature, and whether arising by general statute or by
> regulation, rule or order issued pursuant thereto, the
> relevant records in the system of records may be referred,
> as a routine use, to the agency concerned, whether federal,
> state, local or foreign charged with the responsibility
> of investigating or prosecuting such violation or charged
> with enforcing or implementing the statute, rule,
> regulation or order issued pursuant thereto.

See 32 C.F.R. § 701.112. The Navy argues that its disclosure of

plaintiff's personnel information to the HIPDB is consistent with

this routine use because HHS is charged with enforcing a provision

of the Social Security Act that provides for the implementation of

HIPDB, a national health care fraud and abuse data collection program

that "establishes the types of abuses that are reportable, including

final adverse actions taken against health care providers." Def.'s

Mem. at 27 (citing 45 C.F.R. § 61.1, et seq.). Therefore, there is

a "concrete relationship or similarity . . . between the disclosing

agency's purpose in gathering the information and in its disclosure."

Fattahi, 186 F. Supp. 2d at 660 (internal quotation marks omitted).

Moreover, the Navy argues, it may even have been required to

report Middlebrooks' termination to the HIPDB, which has promulgated

a formal regulation stating in pertinent part that agencies "must

report . . . adjudicated actions or decisions . . . related to the

delivery . . . or provisions of a health care . . . service against

health care providers . . . and practitioners (regardless of whether

the other adjudicated action or decision is subject to a pending

16

appeal)." 45 C.F.R. § 61.11. Adjudicated actions or decisions are defined as "formal . . . final actions taken against a health care provider . . . or practitioner by a Federal or State government agency . . . which include the availability of a due process mechanism . . . ." 45 C.F.R. § 61.3. Termination is one of numerous examples of a formal final action enumerated in the regulation. Id.[11]

The Navy argues that the disclosure to the Tennessee Board of Nursing also clearly complied with both the DoD "routine use" policy cited above as well as another regulation that provides:

> A record from a system of records maintained by a DoD Component may be disclosed as a routine use to a federal, state, or local agency maintaining civil, criminal, or other relevant enforcement information or other pertinent information, such as current licenses, if necessary to obtain information relevant to a DoD Component decision concerning the hiring or retention of an employee, the issuance of a security clearance, the letting of a contract, or the issuance of a license, grant, or other benefit.

32 C.F.R. § 701.112. The Tennessee Board of Nursing is responsible for ensuring that its nurses are qualified through licensure,

_____

[11] Middlebrooks argues that her termination cannot qualify as a final adjudication because the Navy failed to provide her with a pre-termination hearing, which deprived her of due process, yet the Supreme Court cases cited by plaintiff do not stand for the proposition that a probationary medical employee cannot be terminated without a formal hearing. Pl.'s Opp'n at 3-9. The Navy asserts that Middlebrooks received the full process to which she was entitled as a probationary employee. Def.'s Reply. at 7 n.5. Specifically, she was afforded ample opportunity to challenge the information that led to her termination, both before and after the termination occurred. Def.'s Mem. at 28. Moreover, she took advantage of the process afforded to her by instituting an EEO complaint and eventually a civil action on her discrimination claim. Id. at 29.

education, and practice, and the Navy argues that disclosure to this
body comports with the Navy's established routine use. Def.'s Mem.
at 27-28. Middlebrooks fails to respond to any of the Navy's arguments
relying on the Act's routine use exception.[12]

The Court finds that the internal disclosures of plaintiff's
record to key senior agency personnel were permissible pursuant to
§ 552a(b)(1) and thus did not violate the Act. The Navy's external
disclosure of plaintiff's record were authorized by the "routine
use" exception under the Act and the Navy's policy, published within
the Federal Register, that requires these disclosures to the HIPDB

---

[12] Plaintiff's Opposition advances two other arguments,
however, that require only brief attention. Plaintiff first argues
that if the Navy was going to report her, it was required to do so
within 30 days of its decision to terminate her. Id. at 16. She
presumably bases this argument on 45 C.F.R. § 61.5, which states
that an "adjudicated action [ ] or decision must be reported within
30 calendar days from the date of the final adverse action or by
the close of the entity's next monthly reporting cycle." See 45 C.F.R.
§ 61.5; 45 C.F.R. § 61.1. Although Middlebrooks describes this
regulation as a "statute of limitations" for the agency, she offers
no support for that characterization.  A healthcare plan that fails
to report pursuant to 45 C.F.R. § 61.1 is subject to fines, and a
federal agency is subject to having such noncompliance published.
These penalties are clearly designed to incentivize reporting to
the HIPDB, but nowhere in the regulation is an entity barred from
eventually submitting required information to the HIPDB that it did
not disclose within 30 days.
    Plaintiff also argues that the Navy was not authorized to release
information to the Tennessee Board of Nursing because a federal judge
did not approve the release. There is nothing in the Act that requires
prior federal court approval for disclosures, and Middlebrooks cites
no legal support for this argument.

and licensing authorities, such as the Tennessee Board of Nursing.[13]

For these reasons, plaintiff's disclosure claims fail.[14]

### 3.   Institutional Safeguards

Middlebrooks alleges that the Navy violated § 552a(e)(9) and (e)(10) when it failed to establish rules of conduct for persons handling agency records and failed to instruct properly those individuals on the rules. Compl. ¶¶ 242-46. To state a claim under these sections of the Act, Middlebrooks "must identify a 'rule or safeguard' that the Navy 'should have established but did not.'" Def.'s Mem. at 30 (quoting Doe, 660 F. Supp. 2d at 43 and Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1007 n.7 (D.C. Cir. 2009)). Neither in her complaint nor in her opposition brief does Middlebrooks identify such an alternative safeguard the Navy should have employed, and she fails to allege specific deficiencies in the procedures the

---

[13] Plaintiff's efforts to prevent disclosures of the kind at issue in this civil action would inevitably undermine healthcare reporting, which public safety initiatives such as HIPDB are designed to improve.

[14] Plaintiff appears to threaten further meritless litigation by alleging new unlawful disclosures by the Navy. Specifically, she complains in her pleadings that depositions from the district court action in Maryland are not public records and that defendant has violated the Act by referencing them in the Motion to Dismiss. Plaintiff also asserts that defendant's inclusion of Exhibit D (the letter responding to the Tennessee Board of Nursing's request for details of Middlebrooks' disciplinary proceedings) constitutes another violation of the Act for which she intends to sue. Pl.'s Sur-Reply to Def.'s Reply ("Pl.'s Sur-Reply") at 3, ¶ 15. These arguments are frivolous on their face and plaintiff is advised that future obviously nonmeritorious filings will be summarily dismissed.

Navy has in place. Def.'s Mem. at 30. Under Iqbal, this claim cannot survive a motion to dimiss. Id.

Along the same lines, Middlebrooks alleges that the Navy violated the requirement under the Act to maintain an accurate record of its disclosures. Compl. ¶¶ 161-223. This allegation is not only similarly threadbare, but it is in fact contradicted by plaintiff's own admission that she learned of the disclosures when a division of the Navy informed her, sua sponte and in writing, of each disclosure it had made to external entities. See Def.'s Mem. at 30; Compl. ¶ 16.

Plaintiff's failure to identify any specific practices or regulations that require improvement or to suggest safeguards that the Navy should have implemented require that these claims be dismissed.

### C. Willful or Intentional Disregard

To recover damages for violations of the Act, a plaintiff must allege facts showing that the government agency "acted in a manner which was intentional or willful." § 552a(g)(4). This high evidentiary standard "is great - more than gross negligence. '[T]he standard for intentional or willful behavior under the Privacy Act has been articulated as an act committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" Reinbold, 187 F.3d at 361 n.14 (quoting Scrimgeour v. Internal Revenue, 149 F.3d 318, 326 (4th Cir. 1998)). As the Navy

correctly argues, the complaint is replete with adjectives and adverbs that state in conclusory fashion that the Navy's acts were "vicious[] and willful[]," but it fails to allege a single fact to support these assertions. Def.'s Mem. at 14. Therefore, the claim for damages must be dismissed.

### III.   CONCLUSION

For all the reasons stated above, the defendant's Motion to Dismiss will be granted by an Order to be issued with this Opinion. This decision renders moot the defendant's Motion for Summary Judgment, which will therefore be denied.

Entered this 23rd day of September, 2011.


Alexandria, Virginia


                                        /s/ 

                                Leonie M. Brinkema
                                United States District Judge